Good morning. Judge Fay and I are very honored and very pleased to have sitting with us today and earlier this week Judge Richard Goldberg. He's a senior judge from the United States Court of International Trade. As many of you may know, we are one of the busiest courts in the country and we depend heavily on the services of good people like Judge Goldberg who are willing to give their time and come visit with and sit with us. And Judge Goldberg has sat with this court a great many times. We are always very pleased to see him and we're always very appreciative of the service he's rendered and is rendering again this week. So thank you Judge Goldberg. All right, our first case today is Martin v. City of Macon. And I believe arguing is Good morning. My name is Winston Denmark. I have the pleasure of representing Ms. Demetrice Martin and her minor child, Ethan Martin, in this matter which comes to this court from the Middle District of Georgia. It's always a pleasure to be in front of the 11 circuits. We are here to appeal an order that was rendered in May of 2016 by the court below which granted summary judgment in favor of the City of Macon. And I say the City of Macon but it's a unified government, Macon-Bibb County, but in the interest of brevity I refer to them as the City of Macon. The parties and the issues have been narrowed at this point. We started with multiple parties and a lot of different legal issues and we've arrived at a place where we have one remaining defendant, the City of Macon, and there's really a sole issue on appeal. And I just want to make sure and I think it's clear, but your other defendant which had been the apartment complex, you did not appeal the summary judgment order and their benefit is set. That's precisely right, Your Honor. All right. All right. Thank you. The district court granted summary judgment both as a matter of fact and as a matter of law. The district court held in essence that the issue that we identified which was the officer and I'm going to get to a brief recitation of the facts but I just kind of want to lay out the legal issues that confront us. The district court held that the, as a matter of fact, there was no ambiguity in the record that we had not, the plaintiff had not raised a genuine issue of material fact. And correspondingly, the district court held that even if we had as a matter of law, we would still not be entitled to relief. Looking at what brings us here today, this is an incident that happened in January of 2013. And I won't belabor the facts because I'm certain the court appreciates what those facts are, but just highlighting the relevant facts. We had an incident where a mother and her two minor children were at their residence. Apparently, one of the minor children, a young man, Ethan, had been throwing pine straw at a dog who was in the apartment complex on the second floor. The owner of the dog, a Miss Katie Young, happened to be the girlfriend of Justin Fox, who was both a Macon City police officer as well as a courtesy officer employed by the apartment complex. When Miss Young observed the young man throwing what she defined as crap at their dog, she sent a text message to her boyfriend indicating such, whereupon Mr. Fox returned to the apartment complex and tried to identify the youthful offender that his girlfriend had described. He ultimately determined that the young man was Ethan Martin, who resided with his mother and his younger brother. Ethan was eight years old at the home. He pounded on the door, and when the door was open, the officer immediately told the young man, turn around and put your hands behind your back. And he ultimately forced his way into the apartment. Now, the young man was hysterical. His mother didn't understand what was going on. It's important to note that the officer had obviously no warrant for the entry. There were no exigent circumstances that would allow the entry into this private dwelling place. Typically, the way we'd see a case like this would be you would be suing the officer, and the officer would try to argue typically that he had qualified immunity. He would lose badly probably in this situation because, not to prejudge, but you're not suing the officer in this regard on this. Today, we're here not on the officer or on qualified immunity or the officer's liability. You're here for a different kind of defendant, which is the municipality itself. Indeed, Your Honor. And that brings us to the core issue, whether Mon-El allows government liability in this case, whether we can impute the actions of this officer to the governmental entity based on the presence of a policy custom or practice of a constitutional deprivation. That's the core of the issue today. You don't disagree that the city had a policy against doing what this officer did? Your Honor, they had a written policy against doing what this officer did. And indeed, he was terminated. And he was, in fact, terminated. Yes, Your Honor. The issue, though, is the officer's indication that he was trained to place juveniles in handcuffs and then to conduct an investigation and figure everything out. That testimony was uncontroverted in the record. He testified in that regard twice. First, during the internal affairs investigation, he told that to his supervisor, Marquette King. And then secondarily, when I had to pose him, I asked him the question plainly. So do you just place handcuffs on people and then conduct an investigation? He said, well, yes. Well, I think he said there was a little conflict there. He said sometimes he did it after the investigation, I guess. You're right, Your Honor. Officer Fox said three things. In this case, he did it before he's right away. Yes, Your Honor. The first thing he said was when Marquette King asked him the question, he said, yeah, I was trained by my field training officer to do this. Then when I asked him, he said, well, yes, I just put handcuffs on people. The third thing he said was, well, sometimes I do. And the district judge found that that equivocation, the third time he answered the question, dispense of any notion that there was a genuine issue of material fact. You've got to show why the municipality, though, is liable. Yes, Your Honor. Yes, you're absolutely correct. That is my point to show. We can talk about the behavior of Mr. Fox, the cop, but you have to convince us that they're supporting evidence to get you out of summary judgment against the municipality. Indeed, you're absolutely correct, Your Honor, and I embrace that burden. And here's how I think I do that. Fox's testimony was that he was trained in that regard. Well, we believe that that training establishes the governmental liability. In the other cases, most recently this court decided the Coons case just last year. Coons and some other cases were all different. None of those cases dealt with a situation where an individual was trained in that regard. And there may be some dichotomy. Didn't Fox qualify that under oath? Didn't he say if the officer's safety was concerned, he would then use the handcuffs? Yes, he did, Your Honor, but my position is this. And, of course, there was no officer's safety involved with this minor. There was no officer's safety involved. That's exactly correct. But when there's some ambiguity in the record, what ought we do with that? What's ambiguous about saying I only use handcuffs when officer's safety is involved? If he had only said that, then there would be no ambiguity, but that's not all he said. But that's the policy. Well, that begs the question. Is that the policy? Because he said he was trained to place people in handcuffs and then conduct an investigation. If the officer's safety was involved. He made a qualified statement, then he made some unqualified statements. And I'm saying that's the ambiguity. On the one hand, he says, oh, yeah, but it's only when the officer's safety is at issue. But wouldn't it have been better for you to clarify that if that's what you thought your case depended on and ask him, are there situations where you do handcuff when officer's safety is not involved? Then we'd all be crystal clear. Yes, Your Honor. Yes, I wish I had asked that question. But the record as it is right now, I didn't ask that question. And so we have a situation where he gives a qualified response and then he gave two unqualified responses. And my argument is that that ambiguity requires us to determine what's the next step. The law says that I don't have to show that I have the better of the argument. I don't have to present a winning argument. I have to meet an evidentiary threshold. Do I raise a factual issue that rises to the level of genuineness? That's Rule 56. Do I create a genuine issue of material fact? Now, on balance, the court may say, well, I think that the defendant has the better of the argument. Yeah, but as Judge Carnes pointed out, the problem is we're not talking about a suit against the officer or a claim against the officer. They're claims now against the city. Yes, Your Honor. The city's policy, apparently, without any contradiction at all, is you don't use handcuffs in this situation. You only use handcuffs during an investigation if the officer's safety is involved. Yes, but my position is there's a contradiction between the written policy and the way his field training officer trained him. He testified that it was his field training officer that told him, just put handcuffs on people. When the officer's safety is involved. Well, he said that the third time he was asked. He didn't say that the first time or the second time he was asked. So he gave the third answer, which is fine, but we cannot disregard what he said when I asked him the question the first time where he gave an unqualified response. We just put handcuffs on folks. Witness never gets to clarify or correct his testimony. If they say one thing that's general, they're stuck with it, even though two questions later they explain what they meant. Well, I'm not certain. I think that's an inference that you could run. He was explaining what he meant, but I think the inference is cut in my favor, not in the defendant's favor. I think that you could argue that he was clarifying what he said, or you could argue that. Well, I think your time is almost up, so we will, I'm sure, hear more from you on this topic when you stand back up again. Thank you. Good morning, Your Honors, and may it please the Court. I'm Dawn Lewis, and I'm here for the city of Beacon. And as we might expect, the Court has gotten right to the heart of the matter that Mr. Fox, who was the bad actor in this scenario, is not here. He was a party to the lawsuit earlier, and all the claims against him have been dismissed with prejudice. So, here we are, looking for some relief against the city of Macon, now Macon-Bibb County. And we would submit that even as distasteful and even egregious as the factual scenario in this situation was, the plaintiffs have simply not made their case to hold the city liable, the city county, I will refer to them as the city, for the actions of Mr. Fox. And I think that Mr. Denmark is attempting to proceed under a failure to train or supervise theory of liability, which can happen in certain instances. I think at first, the main argument, there's two prongs, two parts of the same issue, but I think he's saying here that, you've heard the argument, because in the deposition, Fox one time or two times said, yeah, I was trained to put handcuffs on during an investigation, even though he clarified that that statement indicates that was his training, therefore we have a disputed issue of fact. What is your response to counsel's argument? Well, Your Honor, even if Mr. Fox unequivocally testified that, yes, I was trained to put handcuffs on and then investigate, that's not sufficient to hold the city liable for his actions. And that is because he has to demonstrate a policy or a custom of Macon, the city of And as Judge Faye has astutely noted, the policies directly prohibited, contradicted all of these behaviors on the part of Mr. Fox. And with respect to this issue of whether his training was sufficient or inadequate or even trained him so as to go out and unconstitutionally handcuff this eight-year-old child, there has to be a pattern of constitutional violations. In other words, one instance of unconstitutional conduct is not sufficient. The city would have to be on notice of a need for additional training or on notice that training was deficient in this area. And there's been absolutely no showing of that. No indication that other officers have been handcuffing eight-year-olds? No, ma'am. No, ma'am. No other incidents. I mean, the plaintiffs entirely rely on this one incident with Officer Fox. And when he did it, he got fired? Yes, sir. He was unanimously recommended for termination, and when he received notice of that, he resigned before it took effect. Yes, sir. With regard to case law, to the extent that we need to go into that, as I said, the city would have to be on notice of this need for training. And this line of reasoning goes back to a U.S. Supreme Court case, the city of Canton case, which talks about the possibility of a need for training being so obvious that it can be imputed without direct proof of actual notice to the city. And in that case, the Supreme Court left open or sort of hypothesized about this area of the provision of firearms to officers and the fact that they're called upon to exercise deadly force in certain situations. But since then, we've had the Gold v. City of Miami case. That was an 11th Circuit case, a case in this court, that discussed handcuff complaints, and that was a disorderly conduct charge and then a complaint about excessive force for use of handcuffs. And in that case, again, the court found, this court found, that there were not other complaints related to use of handcuffs, and it did not create an issue that the need for training was so obvious that the city would be on notice of the need for additional training in that regard. Again, there have been other cases that reiterate this, this notion that a single incident of a constitutional violation is not sufficient to prove a policy, even in instances where the incident involves several employees of the municipality. Craig v. Floyd County, the court noted, this court noted, that the plaintiff couldn't point to another occasion when an alleged policy or custom contributed to or exacerbated a medical condition of an inmate, but that inmate relied instead on proof of a single incident. And in that case, the plaintiff had contended three persistent and widespread practices, but there was no evidence that the practices had been employed for any other detainees. Likewise, in McDowell v. Brown, also an 11th Circuit case, the plaintiff alleged that there was a policy or custom of jail understaffing that resulted in a constitutional violation by virtue of a delay in transporting this individual to receive medical care. And again, it was a tragic situation. This court noted that it was an isolated incident. The plaintiff didn't point to any other occasion when jail understaffing created that sort of situation. And you just cannot pin liability on a municipality without that culpability showing a fault and the required causal link. And in this case, the district court rightly determined as a matter of law that the plaintiffs had not established an essential element of the claim. So again, even if Officer Fox unambiguously testified that that's the way he was trained, it's not sufficient. There has to be more than that. This was one incident and there was absolutely no evidence, no attempt, no allegation of any other incidents involving handcuffing juveniles or handcuffing folks before they conduct an investigation. All right. Thank you. Thank you. Good morning. May it please the Court. My name is Renee Rainey. I'm here appearing on behalf of Defendants Overlook and Woodruff. I think we've clarified the issue today that whether or not the appeal was as to those two defendants. But the district court did enter one order as to relative to multiple motions for summary judgments involving several different defendants. It wasn't necessarily clear before this morning that the appellants were not appealing any of the decision as to the grant of summary judgment to Overlook and Woodruff. You wanted to be safe. And we wanted to be safe, basically. So we're just based on it's safe here this morning. Sounds like you're winning. Unless you want to say something to change our minds. I was prepared, but I'm not going to open my mouth to anything else. Quit when you're ahead. Thank you, Your Honor. Thank you. All right. Mr. Denmark, I think it is your turn now. Can I apologize? No, no. I want to kind of quickly dispel the notion that about the single incident. This Court held that a pattern of injuries is not necessary to show the existence of a custom or policy. For a municipality may deliberately establish a practice that leads to a single deprivation. And I took issue with the District Court's order where the Court unequivocally said a single act ain't enough. Well, this Court has said that it may be enough. And that's in the Gilman v. City of Atlanta case that this Court decided in 1985. We argue that that case relied on what the U.S. Supreme Court said in a different case also from 1985. Section 1983 cause of action is available for the first victim of a policy or custom that would foreseeably and avoidably cause an individual to be subjected to deprivation of a constitutional right as it is for the second and subsequent victims. So what the Supreme Court was saying is you don't get a freebie. You don't get to violate somebody's constitutional rights and say, oh, that was just the first time. And we can't be held liable for that one. But the second, third, fourth, and fifth, now you can get us. That's inconsistent with basic logic and any notions of justice. And this Court has so held it in Gilman, 1985 that a single act can be the basis for money on liability. So the notion that it was only one act, I think we really need to dispense with that. And if for no other reason, I think that the lower court should be responsible for both this Court's determination and the U.S. Supreme Court's determination. I also want to quickly address this issue about the written policy. You can't create a written policy against constitutional deprivations on the one hand and then train officers to violate people's constitutional rights on the other and then say, well, we had a written policy against that. Well, Fox testified without contradiction that he was trained to do this. We're back into that dispute. We're back into the dispute we had before and whether or not he clarified that it wasn't. He wasn't saying in all circumstances, but there are times. Right. Well, I mean, but the way he, it wasn't just a yes to that question. And I think that's the important part that may need clarification. What Fox said is, that's just the way I was taught. I mean, from the FTO, which is the field training officer, when a juvenile is involved, we just place them in handcuffs, and then we talk to the parents. Well, no, it wasn't. I thought the reading of that, but I'll read it again, but I thought that was to explain when he does handcuffs when parents are present, that how they do that, and it was a relationship to the presence of parents and how the timing of that works. I mean, that's certainly an inference that can be drawn, but I didn't read it that way. I read it as him explaining why he would do that, and he doubled down on that in his deposition when I asked him the question, and he said, yes. So I think that in the district court even pointed that out. On recross examination, counsel for plaintiffs asked Fox whether it was his testimony that the training taught you to place people in handcuffs while you conducted an investigation. Fox responded, yes. So that's the second time he said it. He said it, and then he doubled down on it, and then the third time he cleaned it up. I don't think that that destroys a genuine issue of material fact. I think that's the essence of a genuine issue, and I think, like I said, this court, the lower court opposing counsel may say on balance, I think they got the better of the argument. Maybe they do, but under our laws, that's for a jury to decide. So I'm not here saying that I should win on the ultimate question. I'm here saying that the district court erred when it granted summary judgment in the face of this genuine issue of material fact, which I've met my evidentiary burden. I crossed that evidentiary threshold. I pointed to specific evidence in the record that was uncontroverted. Now, in response, and I point out in closing that the notion that Fox, it was only a single incident, the district court raised that. In response to my argument about Fox indicating he was trained to do so, opposing counsel stated that Fox's statement is simply not credible and should be regarded as a self-serving statement, likely uttered in a grasping attempt to save his job. That was their response. The notion that he came and clarified his testimony, the district court brought that up, as well as the whole notion that it required a single incident. And so that put me at a disadvantage because I didn't have an opportunity to respond to those arguments from opposing counsel. I saw them for the first time when the district court dismissed my case. Thank you, Your Honor. Thank you, Mr. Dunlap. All right. We call the second case, Moultrie v. George Department of Corrections.